KERENS NATIONAL BANK ET AL. v. W. T. STOCKTON, INDEPENDENT EXECUTOR, ET AL.

No. 6600.  Decided May 13, 1936.
(94 S. W., 2d Series, 161.)

*Richard & A. P. Mays,* of Corsicana, for plaintiffs in error.

The property belonging to the estate of the testator and his children having acquired their interests under his will, had no right independent of the rights of the estate, and the executor having voluntarily paid off the lien indebtedness, the right of subrogation by him to the rights of the holders of the lien did not exist. McKay v. Matthews, 285 S. W., 335; Parker v. Smith, 11 S. W., 909; Simkins Administration of Estates in Texas (2d Ed.), 177; 5 Pomeroy Eq. Jur., sec. 2343; 6 Texas Jur., p. 801, sec. 165.

*J. S. Callicutt* and *B. W. George,* both of Corsicana, for defendants in error.

The trial court correctly held that the executor of the will was entitled to right of subrogation to all of the rights of the holders of the lien indebtedness against two tracts of land which he had paid to said lien holders to protect the land from sale. Galbraith v. Howard, 32 S. W., 803; Gabraith-Foxworth Lbr. Co. v. Long, 5 S. W. (2d) 162; Harris v. Hamilton, 221 S. W., 273; 25 R. C. L., 1322, 1348.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

On December 10, 1913, L. M. Morris acquired by purchase 275 acres of land in Navarro County, executing vendor's lien notes for a large part of the purchase money. At that time he was living with his first wife. November 7, 1915, his first wife died, leaving six minor children. In 1916 Morris and his six children moved to the 275 acres and made their home

there. July 22, 1918, Morris, while a widower, purchased an additional 20 acres of land situated about one mile from the 275-acre tract, and used it in connection with his home on the 275 acres. For the 20 acres he executed vendor's lien notes for a large part of the purchase money. April 13, 1919, Morris married his second wife, Mrs. Etta Morris, by whom he had no children.

On November 20, 1920, L. M. Morris died, leaving a will which was later duly admitted to probate. He left surviving him his second wife and his six minor children. At the time of his death he owed unsecured debts amounting to several thousand dollars as well as the debts existing against the 295 acres of land secured by a vendor's lien. He also left insurance in the sum of $12,000.00, the policies being payable to his children, but subject to certain provisions of his will. W. T. Stockton was made independent executor of his will and trustee of the trust therein created.

On August 10, 1920, Stockton, as executor and trustee, obtained a judgment in the District Court of Navarro County construing the will, adjudicating the rights of the various parties thereunder, and attempting to declare that none of the property was subject to payment of unsecured debts. The present suit was instituted January 9, 1922, in the District Court of Navarro County by the Kerens National Bank against Stockton as executor and trustee of the Morris estate and against all parties interested in the estate. J. B. Reese Lumber Company, Daniel-Price & Company and J. W. Mabry & Co. were intervenors in the suit. On December 10, 1923, judgment was entered in the case and an appeal was taken to the Court of Civil Appeals for the Third Supreme Judicial District at Austin. An elaborate opinion was filed in the case by the Court of Civil Appeals. 281 S. W., 580. A writ of error was granted, and an opinion was rendered by the Supreme Court which was reported in 120 Texas, 546, 40 S. W. (2d) page 7. It will require a reading of both of these opinions to obtain a full understanding of all the facts and the contested issues. We deem it necessary to briefly state the matters decided and which constitute the law of the case:

(a) That the judgment construing the will was no barrier to the establishment of the statutory liens of the Kerens National Bank and the intervenors mentioned.

(b) That the surviving wife of L. M. Morris and his minor children were entitled to a homestead in the 20-acre tract

and in an undivided interest of 137½ acres of the 275-acre tract, subject to the vendor's liens against each tract.

. (c)   That the excess over the homestead in the 275 acres, amounting to an undivided 137½ acres, was first subject to payment of the vendor's lien indebtedness, but that it was necessary to extinguish the entire indebtedness against the 295 acres before the lien against the homestead would be satisfied.

(d)   That the rights of unsecured creditors were contingent upon the existence of a surplus in value of nonexempt property after the discharge of purchase money liens.

(e)   That the estate of L. W. Morris was insolvent at the time of his death.

(f)   That under the will of Morris his children were put to an election to take under the will or by inheritance, and that under the election, which had been exercised, the one-half interest in the community property of Morris and his first wife inherited by the children had become the property of the estate of Morris, and subject to the trust provisions and other terms of his will, including the provision that all just debts of the testator be paid out of his estate.

(g)   That the insurance money, although the policies were payable to the children, was to be subject to the trust provisions of the will and was to become a part of the corpus of the trust estate.

(h)   That the insurance money was not subject to payment of unsecured debts of the testator and the executor and trustee could not be compelled to use same in payment of debts; but that said executor and trustee could, at his own election, use same in payment of liens or debts against any property passing under the will.

(i)   That as there was no finding as to the value of nonexempt personal property, judgment could not be entered finally determining whether or not there was property belonging to the estate which, at that time, was subject to the statutory liens of Kerens National Bank and intervenors, and the cause was reversed and remanded for another trial.

Apparently from the time the judgment construing the will was entered on January 10, 1921, and pending the time this case was formally on appeal, and continuing up to the time of the second trial the executor and trustee had possession of all the property affected by the will of L. M. Morris, including the 295 acres of land, the insurance money, and all personal property owned by Morris and his second wife at the time of

his death. On September 2, 1921, the executor and trustee acquired from Mrs. Etta Morris, the second wife of L. M. Morris, a conveyance to the estate of all her interest in and to all property of the estate and in and to all community property of Morris and herself, including her life estate and homestead interest. The consideration paid by the executor to Mrs. Morris was $3100.00. After the conveyance the interest thus acquired was regarded as a part of the estate of Morris for all purposes.

The case was tried a second time on April 11, 1932. At that time the situation had materially changed from what it was when the former trial was had. The prior decisions of the Court of Civil Appeals and of the Supreme Court, as regards the existence of nonexempt property, were predicated upon the condition of affairs existing at the time of the first trial. At the time of the second trial the executor and trustee had paid off all of the lien indebtedness representing purchase money against the 295 acres of land and had obtained releases of these liens. In response to special issues the jury found that the executor and trustee had paid the sum of $20,996.00 as principal and interest on the lien indebtedness against the 295 acres. Of this amount, $6000.00 was out of insurance money and $14,996.00 was out of rents and revenues received from the 295 acres of land. In addition to the rents and revenues and insurance money, the executor and trustee had received the sum of $525.00 from the sale of nonexempt personal property.

At the time of the last trial the situation, therefore, was as follows:

The executor was in possession of the 295 acres of land free from all purchase money liens, was in possession of the exempt property (such as it may have been), and was holding for the benefit of the Morris children the homestead in the 20 acres and in an undivided 137½ acres of the 275-acre tract. He had no funds on hand from which to pay unsecured debts, and the trust created by the will of Morris was still subsisting. This trust, briefly, was that all property of the Morris estate passing under the will, after payment of debts, was to be held as a unit and not subject to partition until the youngest of the six children should reach the age of 25 years. The executor and trustee was to have control of the property, with power to sell and reinvest, and could use the income therefrom and, if necessary, the corpus for the education of the children. By necessary implication, he had authority to use the income of the

estate, pay taxes and necessary expenses of preservation and upkeep of the property in order to effectuate the purposes of the trust. We also think he had by implication authority to use the property and its income for the proper support and maintenance of the children so long as they were minors and, if necessary, after they attained their majority. At the termination of the trust the property of the estate was to be divided equally between the children, but should any child die leaving children, such children should receive the share of such deceased child.

On the second trial of the case the debt of Kerens National Bank was reestablished, and at the time of the judgment amounted to $4,605.95. The debts of intervenors J. B. Reese Lumber Company, Daniel-Price & Co. and J. W. Mabry & Co., established by the prior judgment, were undisturbed, but all these parties were denied the right to collect their indebtedness or any part thereof out of the 137½ acres of land, representing the nonexempt property of the Morris estate. The Kerens National Bank and intervenors appealed. They will be called herein plaintiffs. The judgment of the trial court was affirmed by the Court of Civil Appeals. 61 S. W. (2d) 572. The theory upon which the plaintiffs were denied relief by the trial court and the Court of Civil Appeals was that the executor and trustee had paid secured debts of the estate with funds legally belonging to the beneficiaries of the trust (Morris children) and as trustee of said children he was entitled to be subrogated to the purchase money lien as against the 137½ acres nonexempt property for an amount in excess of the value of said 137½ acres. The question of subrogation is, therefore, the main question in the case.

The plaintiffs are asserting, however, that the executor and trustee is claiming subrogation of priority on account of certain payments which are not rightfully superior to their debts.

The burden of defendant Stockton's pleading is briefly this: "In order to pay off and satisfy the vendor's lien indebtedness against the homestead interest of the children, it was necessary for him to pay off the lien against the entire 295 acres, and in doing so he was forced to use funds belonging to the children, and not to the estate represented by him. That the funds belonging to the children used by him for this purpose were insurance money and rents and revenues arising from the homestead. He, therefore, takes the position that as funds belonging to the children were used to pay off and

discharge the vendor's liens as to the whole 295 acres, in order to secure to the children their homestead interest, he, as their representative, is suborgated to the vendor's lien existing against the nonexempt interest in the land.

■■ It was found by the jury that the executor and trustee paid on the secured indebtedness the sum of $6000.00 out of insurance money. From a reading of the prior opinions construing the will, it will be seen that while the policies of insurance were payable to the children, yet the testator had authority to attach thereto such conditions and limitations as he might desire; and that, under the provisions of the will, the insurance money became a part of the Morris estate, subject to be used by the executor and trustee, at his discretion, in the payment of secured debts. After a careful consideration of the whole record, we have reached the conclusion that in making payments on the lien indebtedness out of the insurance money, the executor and trustee acted voluntarily and upon his own election. There are several circumstances which indicate that he did so. Under prior decisions he had a right to first sell the nonexempt property and apply the proceeds to payment of the vendor's lien against the homestead, thus materially reducing the indebtedness against same. This he did not do. He testified that from the beginning he commingled all of the funds,—the insurance money, amounts received from sale of personal property, and rents and revenues, —and made payment therefrom indiscriminately. There was no effort to earmark the insurance money and treat it as the children's money. The executor and trustee had a right to use this money in paying lien indebtedness as money belonging to the estate, and when he did so he paid it as money of the estate. The Morris children having elected under the will, all of their property became the property of the estate and subject to the trust. While the children were the beneficiary owners, yet their interest (other than the homestead which will hereinafter be discussed) was subject to the payment of all the just debts of the testator, and particularly the unpaid purchase money. The executor and trustee as the representative of the estate was primarily liable for the payment of all of this indebtedness. It is, of course, fundamental that one who pays an indebtedness for which he is primarily liable is not entitled to claim the benefits of an equitable subrogation. Without further discussion we hold that the trustee of the Morris children was not entitled to equitable subrogation because of having discharged the purchase money liens against the estate out

of the insurance money. The argument that he was forced to pay the lien indebtedness partly out of insurance money in order to save the homestead is fully answered in what follows.

■ The fact of a homestead right in the Morris children, which existed in their favor from the date of the death of L. M. Morris by virtue of the Constitution and laws of the State, and notwithstanding the will, presents another question. This homestead interest was, of course, subject to the purchase money liens, but could not be made subject to other debts of the testator. While it is true, as shown by the prior decisions, the children had the right to require the holders of the purchase money liens to resort to the nonexempt 137½ acres for satisfaction before forced sale of the homestead 157½ acres could be had; yet the homestead was still subject to the purchase money lien until the entire debt against the 295 acres was paid. No sale of the 137½ acres was made. The executor and trustee is presumed to have determined that the best interest of all concerned prompted another course. Instead of making sale of the excess, he rented the whole tract, and from the rents and revenues and the insurance money ultimately paid the entire purchase money indebtedness together with interest and taxes. The amount of lien indebtedness paid by the executor and trustee, including interest, was $20,996.00. Of this sum, $14,996.00 was paid out of rents and revenues from the entire tract. At the time of the trial he had paid in taxes on the 295 acres the sum of $2246.30. The homestead was, of course, subject to its proportionate part of the taxes, being approximately $1200.00, and this liability was superior to the homestead claim.

■ It is argued in behalf of the children that rents and revenues arising from the homestead were their separate funds and did not become a part of the trust estate, and because the excutor and trustee used such funds to discharge the lien indebtedness, they should be subrogated to the lien as to the nonexempt property. This contention has furnished the most difficult question of the case. After a most thoughtful consideration of the question, however, we have concluded that the contention cannot be sustained. While it is true rents and revenues arising from the homestead were used to discharge the lien as to the whole 295 acres, yet it must be kept in mind that the homestead existed as to an undivided interest in the 275 acres, and not as to any particular acreage. It must also be kept in mind that while the homestead existed in the 20

acres and in an undivided one-half interest of the 275 acres, it was subject to the vendor's lien, and this was true until the lien against the entire 295 acres was satisfied. It seems to be reasonably clear that the rents and revenues from the homestead interest used in paying the lien indebtedness could not have exceeded the indebtedness equitably proportioned to that interest. It is insisted by the executor and trustee that he was forced to pay the rents and revenues from the homestead interest in order to protect and save it to the children. He says that the indebtedness was due, that the holders thereof were demanding payment, and refused to further extend it. In other words, it is made obvious that unless these rents and revenues had been used to pay the lien indebtedness, it could not have been paid at all, and the homestead would have been lost. It must be borne in mind that until this purchase money was paid, the Morris children had no such estate as would support the homestead right against the person to whom such purchase money was due. Floyd v. Hammond (Com. App.), 268 S. W., 146, and authorities there cited. From this it is apparent, it seems to us, that the Morris children were confronted with the plain proposition that if they were in reality to have a homestead they were in equity required to assume the payment of the purchase money, at least in an amount proportionate to the homestead, and they were, equitably speaking, primarily liable for this part of the purchase money. In fact, then, they were not compelled to pay this lien indebtedness in order to protect a vested homestead right, but were in reality only purchasing this right and paying what they were equitably due for same. Subrogation is of purely equitable cognizance, and we think that it is safe to say that as these children were only paying what they were equitably required to pay in order to have a homestead at all, they cannot assert that they are entitled to subrogation as to the nonexempt property. If, of course, the homestead had been fixed as to a definite acreage and it could have been shown that revenue from this definite acreage had been used to discharge a lien upon nonexempt property, another question would have been presented. That is not true here. We have concluded that as to plaintiff and intervenors the nonexempt interest in the 275 acres was subject to the payment of their debts. All of these debts having been allowed and approved in such way as to constitute a statutory charge against the nonexempt property belonging to the Morris estate, we do not think that the existence of the trust could operate to place same beyond the reach

of these creditors. No unsecured creditor, other than the plaintiff and intervenors, has appealed from the judgment of the trial court denying a recovery out of nonexempt property, and therefore the judgment of the trial court and of the Court of Civil Appeals as to such creditors is affirmed.

It was shown that the executor and trustee had paid $211.75 funeral expenses, $20.00 medical bills, $43.90 Federal income taxes, $307.68 court costs, $1540.00 attorney's fees, and about $1100.00 to himself. It is not shown that these sums were paid from rents and revenues from the homestead. We think it reasonably clear that they must have been paid from insurance money and money received from the sale of personal property. Under this state of the record, we see no reason for a contention that subrogation arose on account of these payments.

The judgments of the trial court and the Court of Civil Appeals are reversed and the cause is remanded with instructions that the trial court ascertain the correct amount of the indebtedness of plaintiff and intervenors to date of entry of final judgment, and proceed to enforce satisfaction of same out of nonexempt property in such manner as will be equitable and to the best interest of all parties; all in accordance with this opinion.

Opinion adopted by the Supreme Court May 13, 1936.