**RICKETTS et al. v. ALLIANCE LIFE INS. CO. et al.**

**No. 5065.**

Court of Civil Appeals of Texas. Amarillo.

Oct. 30, 1939.

On Rehearing Dec. 4, 1939.

Second Rehearing Denied Jan. 15, 1940.

·Carl Gilliland and James C. Gilliland, both of Hereford, for plaintiffs in error.

Morgan, Culton, Morgan & Britain and Ben P. Monning, all of Amarillo, and Henry D. Akin, of Dallas, for defendants in error.

FOLLEY, Justice.

On July 18, 1914, Mary E. Ashbrook, wife of D. F. Ashbrook, both of Deaf Smith County, Texas, executed her last will and testament. The first and second paragraphs of the will provided respectively for her burial in a Christian-like manner and for the payment of her just debts. The sixth paragraph appointed her husband as sole executor without bond. The third, fourth and fifth paragraphs of the will are important in the disposition of the case before us. They are as follows:

"Third. I give, devise and bequeath to my beloved husband, D. F. Ashbrook, during his life, for his use and benefit during his life the following described two tracts of land lying and being situated in Grundy County, Missouri, to-wit: The Northwest quarter (¼) of Section No. (21) Twenty One, Township No. (63) Sixty Three, Range No. (23) Twenty Three, containing 160 acres. Also the Northwest (¼) quarter of Section (15) Fifteen, Township (63) Sixty Three, Range (24) Twenty Four, excepting 20 acres out of the Southwest corner of the Northwest (¼) quarter of Section (21) Twenty One, being the same land deeded to me by my father, John F. Wolz, on September 25th, 1913, which deed is recorded in Book 125 at page 615 in the recorder's office. And upon the death of my said husband, I give, devise and bequeath said two above described tracts of land to my brother, W. Fred Wolz, in fee simple, but in the event my said brother is not living, I give, devise and bequeath said two tracts of land to the bodily heirs of the said W. Fred Wolz, in fee simple, share and share alike.

"Fourth. I give, devise and bequeath to my beloved husband, D. F. Ashbrook, after the payment of my just debts out of same, the residue of my estate whether real, personal or mixed, in fee simple, to be owned, managed and disposed of as he may see proper; Provided, my said husband departs this life prior to my demise, then and in that event, I give, devise and bequeath all the property, real, personal or mixed of which I may die seized or possessed, except that mentioned in Paragraph "Third" above, to the M. E. Church of Spickard, Missouri, in fee simple. I prefer the property to be used for a church building in case there is no good one there.

"Fifth. It is my desire and request that whatever property may be received by my husband under this will shall be managed and handled by him in such manner that it and its proceeds be always kept separate and distinct from any property owned by him at the time of my death or accumulated by him thereafter. It is my desire and request that all the property or its value, which my said husband shall receive under this will shall ultimately pass to and vest in the M. E. Church of Spickard, Missouri, in fee simple. Provided he shall at all times feel free to use or dispose of same for his needs or comforts during his life. It is my desire and request that my said husband shall not, during his life or at his death, give or bequeath any part of the property received under this will to any one other than to the M. E. Church of Spickard."

On March 6, 1922, Mary E. Ashbrook died and the above will was forthwith duly probated in the County Court of Deaf Smith County, D. F. Ashbrook, the surviving husband, qualifying as executor under the will. At the time of her death, among other lands, as a part of her separate estate she owned two quarter sections of land in Deaf Smith County, Texas, one known as M. H. Cahill Pre-emption Survey and the other as the W. A. Hunt Pre-emption Survey, both aggregating 320 acres of land.

On November 1, 1925, D. F. Ashbrook, the surviving husband, executed two notes each in the original sum of $2,400, payable to the order of the Commerce Farm Credit Company. In order to secure the payment of the first note he executed a deed of trust in favor of Jo Zach Miller, III, Trustee, upon the M. H. Cahill Pre-emption Survey. In order to secure the second note a like deed of trust was given upon the W. A. Hunt Pre-emption Survey.

On November 10, 1925, in a general warranty deed from R. L. Elliston and wife, Ella Elliston, conveying Lot 22 and the N½ of Lot 21, in Block 18, of the town of Hereford, Texas, from the Ellistons to J. O. Newell and D. F. Ashbrook, Newell and Ashbrook, as a part consideration, assumed an indebtedness in the sum of $10,000, with interest, due W. E. Neal, which indebtedness was secured by a lien on the property therein conveyed. On November 21, 1925, in a written agreement between Neal, Newell and Ashbrook, the maturity of this indebtedness was extended to November 1, 1930. On January 11, 1929, D. F. Ashbrook died leaving a will in which he devised to the Methodist Episcopal Church at Spickard, Grundy County, Missouri, all the

property which he had received under the will of his deceased wife which had not been disposed of by him prior to his death. The two tracts of land above referred to had not been sold by him at the time of his death. W. M. Ashbrook, brother of the testator, was named executor in this will. The will was probated April 4, 1929, in Deaf Smith County, and on such date W. M. Ashbrook qualified as executor. Thereafter on April 21, 1929, W. M. Ashbrook died. On September 26, 1934, J. C. Ricketts was appointed administrator de bonis non with will annexed of the D. F. Ashbrook estate. On October 3, 1934, W. E. Neal filed in such probate proceedings his claim which was based upon the $10,000 indebtedness assumed and renewed by D. F. Ashbrook as aforesaid. Such claim was approved by the administrator and by the probate court on October 17, 1934.

On November 9, 1929, the Methodist Episcopal Church of Spickardsville (Spickard), Missouri, for valuable consideration, conveyed to Lizzie B. Ashbrook the two tracts of land above described, together with other lands not the subject of this controversy. Thereafter, on November 1, 1932, Lizzie B. Ashbrook executed two notes each in the sum of $1,800 payable to the Monarch Loan Company for money advanced by such company to pay the balance due on the two $2,400 notes executed by D. F. Ashbrook as aforesaid during his lifetime, which notes were secured by deeds of trust executed by Ashbrook upon the two tracts of land. Lizzie B. Ashbrook executed separate deeds of trust upon the two tracts of land to secure the two $1,800 notes. On August 17, 1933, Lizzie B. Ashbrook executed to R. W. Ashbrook, in favor of Peter Austin, a trust deed upon the two tracts of land in controversy, together with other lands, to secure an indebtedness to Peter Austin in the sum of $12,000. In due course the Alliance Life Insurance Company became the owner of the two $1,800 notes and the two deeds of trust securing them.

On June 13, 1937, by an original petition, and on July 19, 1937, by an amended petition, the Alliance Life Insurance Company sued Lizzie B. Ashbrook upon the two $1,800 notes, alleging that the will of Mary E. Ashbrook should be interpreted and construed by the district court, asking for judgment for the debt and a foreclosure of the liens upon the two tracts of land, and alleging that the district court

had jurisdiction of the subject matter by reason of the necessity to construe the will and to determine the validity of, and foreclose, the liens of the Alliance Life Insurance Company. In addition to Lizzie B. Ashbrook, the Alliance Life Insurance Company also sued W. E. Neal, J. C. Ricketts, as administrator de bonis non with will annexed of the estate of D. F. Ashbrook, deceased, the Monarch Loan Company and Peter Austin. The Alliance Life Insurance Company alleged that these last named defendants were asserting claims of some sort to the land in question and asked for a foreclosure against all of the defendants. The Alliance Life Insurance Company further asked that in the event the court should find that the land in question became a part of the estate of D. F. Ashbrook, that its debt and lien be established and the judgment certified to the probate court of Deaf Smith County for observance.

J. C. Ricketts, as administrator de bonis non with will annexed of the estate of D. F. Ashbrook, deceased, and W. E. Neal, as a purported creditor, filed a cross-action asking that the Alliance Life Insurance Company take nothing by reason of its suit; that they have judgment against the Alliance Life Insurance Company, Lizzie B. Ashbrook and Peter Austin cancelling and annulling the deeds of trust executed by Lizzie B. Ashbrook in favor respectively of the Alliance Life Insurance Company and Peter Austin, and removing such liens and claims of superior rights as clouds on the title of said lands as hinderances and interferences with the administration of the estate of D. F. Ashbrook, deceased; and further asking that the rights of Neal, as a creditor of the estate, and of Ricketts as administrator, be adjudged superior to the debts and liens held by the Alliance Life Insurance Company and Peter Austin.

The Alliance Life Insurance Company answered such cross-action by asserting that under the will of Mary E. Ashbrook the surviving husband took only a life estate in said property with remainder to the Methodist Episcopal Church of Spickard, Missouri, or burdened with a trust in favor of such church, and that upon his death the property passed to such church free of Neal's claim. Such life insurance company further alleged that Lizzie B. Ashbrook took title to said land regardless of whether the estate conveyed to D. F. Ashbrook by the will of Mary E. Ashbrook was a life estate or a fee-simple estate; that if the

devise was merely a life estate then the remainder passed to the church under the will of Mary E. Ashbrook free of the debt and claim asserted by Neal; and that under any construction of the will the rights of the Alliance Life Insurance Company and of Lizzie B. Ashbrook were superior to those of Neal and the administrator. Lizzie B. Ashbrook in answer to the cross-action, whose pleading was adopted by Peter Austin, her mortgagee, and by Dewey O. Hedrick, her tenant, who intervened in the cause, entered a general denial, a plea of not guilty, specially pleaded her title to the land free from any claims of the administrator and W. E. Neal, further asserted that she had perfected title to the property under the three and five year statute of limitations and that any right to set aside the deed to her from the church was barred by the four year statute of limitations. Vernon's Ann.Civ.St. arts. 5507, 5509, 5520. The Monarch Loan Company filed a disclaimer.

The trial court in construing the will of Mary E. Ashbrook found that the fee-simple title to the two tracts of land vested in the Methodist Episcopal Church, Spickardsville, Missouri, upon the death of D. F. Ashbrook on January 11, 1929, free and clear of any claim of the estate of D. F. Ashbrook, deceased, which church conveyed the property to Lizzie B. Ashbrook by deed dated November 9, 1929, and filed for record on November 27, 1929, since which time Lizzie B. Ashbrook has had and held peaceable, continuous and adverse possession of the two tracts of land; that W. E. Neal is the sole creditor of the estate of D. F. Ashbrook, deceased, and his right to subject said property to the payment of his claim against said estate or to enforce a statutory lien thereon is barred by the three and five year statutes of limitation, since his cause of action accrued on November 1, 1930, at which time Lizzie B. Ashbrook was a nonresident of the State of Texas, residing in Missouri; that Lizzie B. Ashbrook has a limitation title to the two tracts of land as against W. E. Neal and J. C. Ricketts, Administrator, under the three and five year statutes of limitation; that any right to set aside the deed to Lizzie B. Ashbrook from said church is barred by the four year statute of limitations; that W. E. Neal and J. C. Ricketts, Administrator, are entitled to take nothing by their cross-action; that the title and possession of the land should be decreed and vested in Lizzie B. Ashbrook, free and clear of

the interest, equity or claim of W. E. Neal and J. C. Ricketts, Administrator, subject to the first lien held by the Alliance Life Insurance Company, subject to the lien held by Peter Austin and the lease contract held by Dewey O. Hedrick; and that the Alliance Life Insurance Company is entitled to have judgment against Lizzie B. Ashbrook for its debt, and to have its respective deeds of trust liens against the respective tracts of land foreclosed against Lizzie B. Ashbrook and all the other parties to the suit adversely interested. The effect of the above finding with reference to the construction of the will of Mary E. Ashbrook was that under its provisions only a life estate in the lands in controversy passed to D. F. Ashbrook, the surviving husband. The trial court thereupon rendered judgment in accordance with these findings. From this judgment W. E. Neal and J. C. Ricketts, the administrator, have perfected a writ of error to this court.

There is no controversy in this court between Lizzie B. Ashbrook on the one hand and the Alliance Life Insurance Company and Peter Austin on the other. She admittedly has no defense against their respective claims since she executed deeds of trust in their favor after she acquired the lands by deed from the Methodist Episcopal Church of Spickardsville, Missouri. This action on her part created liens on the property in favor of these parties upon whatever interest she had in the land. In this connection it should be said that Peter Austin asked for no affirmative relief and was granted none by the court with reference to his debt and foreclosure of his liens against Lizzie B. Ashbrook, and therefore no issue is presented in this respect. The only controversy in the case with reference to Peter Austin is whether or not the court was correct in refusing Neal and the administrator any relief on their assertion that Neal's claim was superior to that of Peter Austin.

The construction of the will of Mary E. Ashbrook was the chief controversy in the court below and is the most important issue in this court. The paramount question presented in the interpretation of such will is to determine whether under such will a fee-simple title to the land in question passed to D. F. Ashbrook or merely a life estate with power of sale. If only a life estate with power of sale passed to D. F. Ashbrook, such land could not be

charged with the debt of Neal which was assumed by D. F. Ashbrook after the property passed to him under his wife's will. On the other hand if a fee-simple title without limitations passed under the will of Mary E. Ashbrook, the land, as a portion of D. F. Ashbrook's estate at the time of his death, would be charged with the debt so assumed unless defeated by the defense of limitations urged by Lizzie B. Ashbrook.

There can be no doubt that paragraph four of the will of Mary E. Ashbrook, as above set out, standing alone, would have vested in D. F. Ashbrook the fee simple title to the lands in controversy, the only limitation or restriction placed upon said title in such paragraph being that if D. F. Ashbrook should die before the testatrix such property should pass to the church. This contingency did not occur and therefore such limitation did not become effective. It is an elementary rule of law, however, that in construing a will the intent of the testator must be ascertained, not from one paragraph, but from the will as a whole. The chief controversy in determining the intent of the testatrix in this case is the meaning of the fifth paragraph of the will as to whether or not such paragraph, construed in connection with paragraph four, and the will as a whole, placed a restriction or limitation upon the estate to be taken by the surviving husband. It is the contention of Neal and the administrator that the language used in paragraph five was merely precatory and not mandatory. The Alliance Life Insurance Company and Lizzie B. Ashbrook contend just to the contrary.

It is our opinion that the language of the fifth paragraph of the will is merely precatory and not testamentary in character. It will be noted that in each the third and fourth paragraphs, the testatrix in dealing with the property involved used the words "I give, devise and bequeath". In each of these paragraphs this expression is twice used. In the third paragraph the expression is used in the life estate devised to her husband, and again in disposing of the Missouri land at his death by the devise to her brother, in fee-simple, if living, and if not, to his bodily heirs. The expression is used in the fourth paragraph when she devises the residue, which included the Texas property, to her husband, and again used in the contingent disposition to the church in the event she outlived

him. But beginning with the fifth paragraph the above expression is dispensed with and the words "It is my desire and request" are substituted. We think this fact is very significant. If she had used the latter words in the third and fourth paragraphs as well as in the fifth paragraph there would be more merit in the contention that the language of the fifth paragraph is mandatory; but such is not the case. After having disposed of all her property in paragraphs three and four she then expresses her desires that the devisee under her will keep the property thus received separate from all other property and that the property ultimately pass to the M. E. Church of Spickard, Missouri.

In the case of Burt et al. v. Herron's Executors, 66 Pa. 400, 402, the Supreme Court of Pennsylvania said: "It is undoubtedly true that where a testator makes an absolute devise or bequest, mere precatory words of desire or recommendation annexed will not in general convert the devisee or legatee into a trustee, unless indeed it appear affirmatively that they were intended to be imperative. * * * Should a testator say merely, 'I desire A. B. to have a thousand dollars,' it would be as effectual a legacy as if he was expressly to direct or will it, or were to add, 'out of my estate,' or that it should be paid by his executor. The reason is obvious. A will, in its very nature, is the disposition which the testator desires to have made of his estate after his death. All the expressions in it indicative of his wish or will are commands. It is different when, having made a disposition, he expresses a desire that the legatee or devisee should make a certain use of his bounty."

In Miller v. Stubbs, 244 Pa. 482, 90 A. 1132, 1133, the same court had under consideration a will containing the following language: " 'All the residue of my estate, real and personal, of which I shall die seised and possessed, I bequeath absolutely to my beloved wife, Annie Arnot Dickey, desiring that she shall use such portion of my estate as may seem best to her in the education and support of my beloved son, Robert Graham Dickey, and of my beloved daughter, Edith Scott Dickey, and in case of her remarriage pay ten thousand ($10,-000) dollars to each of them then living.' " In construing this will the court said:

"Under the words 'all the residue of my estate, real and personal, of which I shall die seized and possessed, I bequeath abso-

lutely to my beloved wife, Annie Arnot Dickey,' the appellee was given the residue of the testator's personal estate absolutely, and there passed to her a fee simple in his real estate. What was thus absolutely given to her is not to be cut down by the words which immediately follow, unless they unequivocally show an intention of the testator to reduce the estate given in the first instance. A clearly expressed purpose of a testator is not to be overborne by modifying directions that are ambiguous and equivocal. * * *

"While expressions of a desire or wish of a testator as to a specific disposition of his property, standing by themselves alone, may establish a valid bequest or devise, this is not the rule when such expressions are used after the testator has made an absolute disposition of his property. After an absolute bequest or devise has been made, no precatory words of the testator to his legatee or devisee can defeat the estate previously granted. Hopkins v. Glunt, 111 Pa. 287, 2 A. 183. * * *

"In the present case the testator, after having made a disposition of his estate absolutely, merely expressed a desire that his residuary legatee should make a certain use of his bounty. He did not dispose of his estate in the first instance by expressing a wish or desire as to what should be done with it. If he had so disposed of it, the expression of his wish or desire would have to be regarded as an expression of his intention, to be carried out with the same effect as if his words had been mandatory. The estate was first given to the wife absolutely, and only after it was so given to her was there an expression of desire that she should do certain things with it. Having given his estate absolutely to her, his expressed desire no longer bound it as a mandatory direction to be carried out by her. His expressed desire reached only her, to be followed or not, as she might determine."

In the case of Gilliam v. Mahon et al., Tex.Com.App., 231 S.W. 712, the will involved contained this language: "I give and bequeath to my wife Alice A. Mahon, all my real and personal property * * * also my granddaughter Mittie Mahon to have equal share with all my heirs when the property is divided." The rule therein announced by which to construe the language of such a will·is as follows: " 'Where the first clause of a will in clear, unambiguous language gives and bequeathes to one devisee all the property real and personal of which the testator dies possessed, such estate so given cannot be disturbed, cut down, or diminished by a subsequent clause, which is uncertain and ambiguous in its meaning.' "

In 28 R.C.L. 241, para. 206, it is said: "But an express bequest or devise cannot be cut down by a subsequent clause of doubtful meaning, and an estate granted in plain and unequivocal language in one clause of a will therefore cannot be lessened or cut down by a subsequent clause, unless the language therein is as clear, plain and unequivocal as that in the first grant."

In Brannon et al. v. Morgan, Tex.Civ. App., 106 S.W.2d 841, 843, writ dismissed, this court had under consideration a will, one paragraph of which read in part as follows: "I Bell Morgan am willing Cliff Morgan my husband all of my Earthley Poessiones." Another paragraph of the same will read, in part: "I Bell Morgan request at the death of Cliff Morgan My Husband for Blanche Morgan Brannon and Nell Morgan Cooper to divide the Estate Equley Between them selves." In construing this will this court held that the first paragraph quoted operated to devise a fee-simple title to the husband and that the precatory clause following such paragraph wherein the "request" was made that her two daughters at his death should divide the estate between themselves was "not sufficient to limit the fee simple estate vested by the first clause in C. C. Morgan", citing article 1291 Revised Civil Statutes of 1925.

In Weller et al. v. Weller et al., 22 Tex. Civ.App. 247, 54 S.W. 652, 653, the testator devised the residue of his estate to his wife, "Emma Catherine Weller, and her heirs, forever; .to have and to hold in her own use and benefit until my heirs become of age, and for her to divide equally the amount due to each that she, in her judgment, shall be entitled to * *." In that case it was held that the will vested a fee-simple estate in the testator's wife, and that the clause as to the division of the property was merely precatory and did not create a trust. It was further held that the clause of the will in controversy was merely a request of the testator "compliance with which was left to the discretion of Mrs. Weller".

On the issue of the creation of a trust in favor of the church, in Thomp-

son on Construction of Wills, page 706, para. 559, we find a rule applicable which we think excludes the theory of a trust when applied to the facts of this case. Such rule is as follows: "Precatory words in a will, addressed by a testator to a legatee whom he has the power to command, create no trust in favor of the parties recommended, unless, (1) the intention of the testator to make the desire, request, recommendation, or confidence imperative upon the legatee, so that he shall have no option to comply or to refuse to comply with it, clearly appears from the whole will and the relation and circumstances of the testator when it was made, (2) unless the subject-matter of the wish or recommendation is certain, and (3) unless the beneficiaries are clearly designated." Under this rule we think the contention that a trust arose in favor of the church is fallacious for the reason that the desire and request of the testatrix was not imperative upon the devisee nor did it deprive him of a discretion or option in the matter, and for the further reason that the recommendation is uncertain.

In this connection we think the last sentence in the fifth paragraph is of great importance in construing the will. In this sentence the testatrix expresses a desire and request that her husband shall not "during his life or at his death, give or bequeath any part of the property received under this will to anyone other than to the M. E. Church of Spickard". In making this request does she not recognize that her husband had the authority under the will to "give or bequeath" the property to someone other than such church? Can there be any conclusion drawn other than that she understood that he was authorized to disobey her wishes in this respect, but that she was urging him not to do so? If such was her understanding, such was her intention and her intent should be given a controlling effect in the construction of the will. If the husband had the authority to "give or bequeath" the property to someone other than the church he necessarily held the fee-simple title to the property regardless of the fact that he obeyed her wishes in his testamentary disposition of the property.

Another very cogent reason why we think the devise in paragraph four was intended for more than a life estate is the fact that in giving her husband a life estate in the Missouri lands in paragraph three, she demonstrated that she knew what constituted a life estate and that she knew how to devise one. If the testatrix had intended in paragraph four to devise only a life estate with power of sale she no doubt would have said so in as clear and convincing language as she used in paragraph three. From all the facts and circumstances of this case, and in view of the above authorities, it is our opinion that a fee-simple title to the lands in controversy passed under the will of Mary E. Ashbrook to her husband, D. F. Ashbrook, without mandatory limitations or restrictions.

Having thus construed the will it becomes necessary to determine the respective rights of the parties in regard to their claims. Due to our holding that the fee-simple title to the two tracts of land passed to D. F. Ashbrook under his wife's will we think it apparent that the debt and liens of the Alliance Life Insurance Company are superior to the claim and statutory lien of W. E. Neal. As above stated, on November 1, 1925, D. F. Ashbrook, while he owned the fee-simple title to the land, executed the two $2,400 notes and liens upon the property which indebtedness and security passed in due course to the Alliance Life Insurance Company. Before such indebtedness was acquired by the Alliance Life Insurance Company, on November 1, 1932, Lizzie B. Ashbrook, who then had a deed to the property, renewed and extended both the indebtedness and the security by executing the two $1,800 notes and the liens sued upon. D. F. Ashbrook assumed the indebtedness to Neal on November 10, 1925, which was after the creation of the indebtedness and liens now held in due course by the Alliance Life Insurance Company. Therefore, in point of time the indebtedness of the Alliance Life Insurance Company and its liens arose before the indebtedness of Neal. The latter indebtedness did not become secured by any lien upon the property herein involved at least until the death of D. F. Ashbrook in 1929, and then only by force of the statute. However, Neal's claim and lien should have preference over that of Peter Austin since the latter's indebtedness did not arise until August 17, 1933, when Lizzie B. Ashbrook executed the note in the sum of $12,000, secured by a deed of trust of the same date in favor of Peter Austin. Lizzie B. Ashbrook acquired the land from the church by deed of the date of November 9, 1929, which was within a year from

both the death of D. F. Ashbrook and the order probating the will. Under our construction of the will of Mary E. Ashbrook the church received under the will of D. F. Ashbrook the land subject to the indebtedness against the estate of D. F. Ashbrook, and Lizzie B. Ashbrook took only such title as the church possessed. In other words, on November 9, 1929, the date of the deed from the church to her, she took the property subject to the payment of Neal's claim out of the assets of the estate of D. F. Ashbrook, deceased. Roberts v. Carlisle et al., Tex.Civ.App., 4 S.W. 2d 144, writ dismissed. Having only such an interest in the land we hold that the court's judgment decreeing that Lizzie B. Ashbrook held title to the land as against the claim of Neal and the administrator under the three and five year statutes of limitation was erroneous.

Although the court did not find in his judgment that the claim of Neal was barred by the four year statute of limitations the defendants in error have raised the issue in this court, alleging such defense in support of the trial court's judgment. Neal's cause of action did not accrue until November 1, 1930, and his claim was filed with the administrator on October 3, 1934, and approved by such administrator and by the judgment of the probate court on October 17, 1934, at which time it was not barred by the four year statute of limitations. The approval of the claim by the probate court was a final judgment from which there was no appeal and the adverse parties are in no position at this time in this suit to raise the issue of limitations as against Neal's claim. Gregory et al. v. Ward, 118 Tex. 526, 18 S.W.2d 1049. The trial court did find that the right of Neal and the administrator to set aside the deed from the church to Lizzie B. Ashbrook was barred by the four year statute of limitations, but the issue thus presented becomes immaterial since we recognize the validity of such deed and hold that Lizzie B. Ashbrook took title under such deed to whatever interest the church possessed.

Under the facts of this case we think the trial court exceeded its authority in directing the issuance of the orders of sale in the foreclosure of the Alliance Life Insurance Company's liens. The court had the authority to ascertain the amount due and to foreclose the deed of trust liens, but instead of directing the

issuance of the orders of sale such court should have certified the judgment to the probate court for observance and execution. Gregory et al. v. Ward, supra; Second Nat. Bank et al. v. Ford, 132 Tex. 448, 123 S.W.2d 867, and authorities cited.

It is our opinion that the judgment of the trial court in favor of the Alliance Life Insurance Company for its debt against Lizzie B. Ashbrook and for foreclosure of its liens against her and all of the other parties in the suit should be affirmed; that the portion of the judgment directing the issuance of the orders of sale be reversed and the court directed to certify such judgment to the probate court of Deaf Smith County for observation and execution; that the portion of the judgment which decreed that Neal and Ricketts take nothing by their cross-action be reversed and here rendered in their favor as against Lizzie B. Ashbrook, Peter Austin, the Monarch Loan Company and Dewey O. Hedrick, subjecting said lands to the payment of Neal's indebtedness in the due course of administration of the estate of D. F. Ashbrook, deceased, subject first, however, to the prior rights of the Alliance Life Insurance Company for satisfaction of its claim out of said land; that this judgment be certified by the district court to the probate court for observance and execution; and such being our opinion, it is so ordered.

Affirmed in part and reversed and rendered in part.

### On Motion for Rehearing.

All the parties have filed motions for rehearing. There is one matter urged by the defendants in error which we did not discuss in our original opinion, however, the effect of our holding was to decide the question adversely to the contention of the defendants in error. Upon more mature consideration of the question we have reached the conclusion we were partially in error in this respect. The matter to which we refer is the right of subrogation urged in behalf of Lizzie B. Ashbrook in regard to certain payments made by her upon the indebtedness against the land herein involved. This indebtedness was originally represented by the two $2,400 notes above mentioned which bore interest at the rate of 6% per annum. These notes, as above stated, were renewed by Mrs. Ashbrook on November 1, 1932, by her executing the two $1,800 notes and the liens herein sued upon.

734

■ The pleadings of Lizzie B. Ashbrook allege that she paid $600 on each of the $2,400 notes reducing the principal of such notes to $1,800 each; that after the remaining indebtedness was renewed and extended she made additional payments of principal and interest upon the renewed indebtedness; and that she was entitled to subrogation by reason of the payments so made. The testimony reveals that she paid $500 principal on each of the $2,400 notes on March 24, 1931, and $100 principal on each note on November 1, 1932, aggregating a total of $1,200 paid on the indebtedness upon these two occasions. These payments, according to the testimony of Mrs. Lizzie B. Ashbrook, were made to the Peoria Life Insurance Company, then owner of the notes, and her evidence further shows that such payments were made in order to avoid a threatened foreclosure upon the land. The evidence further shows that on December 30, 1933, Mrs. Ashbrook paid $200 principal on each of the $1,800 renewal notes, reducing the principal of these notes to $1,600 each, and making a total of $1,600 paid by her upon the principal of the indebtedness. Mrs. Ashbrook testified that she paid some interest on the indebtedness and paid some taxes upon the property, but the amounts so paid are not shown by her testimony or by any other testimony, nor were the amounts paid alleged in the pleadings, and, since the burden is upon Mrs. Ashbrook to both plead and prove her right of subrogation, the purported amounts paid for interest and taxes must fall for lack of sufficient pleadings and support in the evidence. 39 Tex. Jur. 803, 804, paras. 43, 44.

■ The record shows that Lizzie B. Ashbrook did not assume any indebtedness against the property she purchased from the Methodist Episcopal Church of Spickardsville, Missouri. The deed from the church to her, in which the property in issue was included, does not mention indebtedness of any sort but merely recites that for a consideration of $3,000 paid by the grantee the grantor granted, sold and conveyed to "Lizzie Ashbrook, all of the interest of said Church in and to the estate of D. F. Ashbrook, deceased, and in and to the estate of Mary E. Ashbrook, deceased, and specially do we hereby convey all interest of said Church in and to the M. H. Cahill Pre-emption, Abstract No. 535; the W. A. Hunt Pre-emption, Abstract No. 537; * * *." After this recitation there followed the description of numerous other tracts of land not the subject of this controversy. Under such a deed Mrs. Ashbrook did not become primarily liable on the indebtedness then outstanding against the property. After she purchased this property and before she became primarily liable for the indebtedness in question she paid $1,200 principal to the Peoria Life Insurance Company, and, according to the uncontroverted testimony, such payment was made in order to prevent a foreclosure. After the execution of the renewal notes she further paid the sum of $400 on the indebtedness which was then her own and for which she was primarily liable.

■ We think the rule is well settled in this State that one is not entitled to subrogation who pays an obligation for which he is primarily liable. Therefore, as far as the $400 payment is concerned Mrs. Ashbrook is not entitled to claim the benefits of an equitable subrogation. Kerens Nat. Bank et al. v. Stockton et al., 127 Tex. 326, 94 S.W.2d 161; Lusk v. Parmer et al., Tex.Civ.App., 114 S.W.2d 677, writ dismissed; McDowell v. M. T. Jones Lumber Co. et al., 42 Tex.Civ.App. 260, 93 S.W. 476. However, in regard to the $1,200 paid by Mrs. Ashbrook upon the indebtedness before she became primarily liable thereon, a different question is presented. Mrs. Ashbrook, having paid the $1,200 to prevent a threatened foreclosure, could not be classed as a mere volunteer who paid the debt without legal or moral obligation to do so. In 25 R.C.L. 1353, para. 37, we find the following general rule expressed: "And there are numerous decisions to the effect that where a purchaser buys land and takes a deed thereto, and subsequently pays a prior lien on the property which he is not primarily bound to pay, but which if not paid might cause him to lose his interest therein, he is subrogated to the rights and remedies of such prior lien, as against a lien which is superior to his title. * * * The purchaser is not technically a surety for the vendor, but in virtue of his ownership of lands encumbered by the judgment or mortgage against the grantor under whom he claims title, who conveyed the same for full value with covenants of warranty, he occupies a position very similar to that of sureties, and is entitled to the same equities, so far as they can be administered consistently with the rights of others."

It will thus be seen that upon Mrs. Ashbrook's payment of the $1,200, under the

circumstances which existed, equity will place her in the position of a surety for the vendor and afford her the same rights to which a surety would have been entitled under similar conditions. We think the rule in regard to the rights of a surety paying the debt of the principal has been definitely settled in Texas by the pronouncement of the Supreme Court in the case of Fox v. Kroeger, 119 Tex. 511, 35 S.W.2d 679, 681, 77 A.L.R. 663. In a very learned opinion in that case written by Judge Critz, the Supreme Court reviews the decisions upon the subject, and, apparently in order to clarify the conflict theretofore existing in the authorities, announced this rule: "From what we have said it follows that we now announce the rule in Texas to be that, where the surety pays the debt of the principal, he has his election to either pursue his legal remedies and bring an action on an assumpsit, or the obligation implied by law in his favor for reimbursement by the principal; or he can prosecute an action on the very debt itself, and in either event he stands in the shoes of the original creditor as to any securities and rights of priority. What we have already said applies with equal force to all debts whether represented by a negotiable instrument or not."

In view of the above rule, under the facts of this case, it is our opinion that for the payment of the $1,200 on the above indebtedness Mrs. Lizzie B. Ashbrook should be subrogated to the rights and remedies held by the mortgagee as against Neal's claim, however, her rights in this matter are inferior to the rights of the Alliance Life Insurance Company, and we do not wish to be misunderstood in this regard. We are not holding that her rights as to subrogation are paramount to, or even on a par with, the rights of the Alliance Life Insurance Company. Such a holding would be prohibited under the rule that a person is not entitled to be subrogated to a creditor's securities until the claim of the creditor against the debtor has been paid in full. 25 R.C.L. 1318, para. 6. However, in our original opinion and judgment in this case we held that the claim of the Alliance Life Insurance Company, as against all the parties, should be first satisfied, and to such holding we still adhere. Under such holding the Alliance Life Insurance Company will have been fully satisfied before the effect of the subrogation accrues to Mrs.

Ashbrook, and therefore such creditor's rights will not be prejudiced in any manner by our holding in this respect. Cason et al. v. Westfall et al., 83 Tex. 26, 18 S.W. 668; Foos Gas Engine Co. v. Fairview Land & Cattle Co. et al., Tex.Civ. App., 185 S.W. 382, writ refused. After such company's claim is thus satisfied we hold that next in order for satisfaction, and prior to the claim of Neal, is the equitable claim of Lizzie B. Ashbrook for the $1,200 paid by her upon the indebtedness and for interest at 6% per annum on $1,000 of such amount from March 24, 1931, until paid, and interest at 6% per annum on $200 of such amount from November 1, 1932 until paid, the dates mentioned being that of the respective payments made on the indebtedness. Williams et al. v. Daniel et al., Tex.Civ. App., 30 S.W.2d 711, writ refused; Phipps v. Fuqua, Tex.Civ.App., 32 S.W.2d 660, writ refused. Under the facts of this case we think equity demands that Mrs. Ashbrook be reimbursed for these sums with interest as stated, and in support of our opinion in this respect we call attention to the fact that had not this money been paid by Mrs. Ashbrook the unpaid debt thereby represented would certainly have had precedence over Neal's claim. We therefore think that she should be placed in the position of the mortgagee for reimbursement of such amount out of the sale of the property in the probate court before any of the proceeds of such sale may be applied to the payment of Neal's claim. Sullivan et ux. v. Doyle, 108 Tex. 368, 194 S.W. 136; Harrison v. First Nat. Bank of Lewisville et al., Tex.Com. App., 238 S.W. 209; Davis v. John V. Farwell Co., Tex.Civ.App., 49 S.W. 656.

The motion of the plaintiffs in error is overruled. The motions of the defendants in error are granted in part and our holding in our original opinion is hereby modified to the extent that after the satisfaction of the Alliance Life Insurance Company's claim out of the sale of the land herein in the probate court, if the same is satisfied, that the $1,200 claim of Mrs. Lizzie B. Ashbrook, with interest as above stated, be next satisfied out of any funds remaining after the payment of the claim of the Alliance Life Insurance Company, and that after the satisfaction of the claims of both such company and Mrs. Ashbrook any amount remaining shall be subjected to the payment of Neal's

claim in the due course of the administration of the estate of D. F. Ashbrook, deceased. It is further ordered that our holding in this respect, in addition to our holding in the original opinion, be certified by the district court to the probate court for observance and execution.