**Exa P. ROSS**
**v.**
**Edwin BROWN.**
**No. TY–73–CA–149.**

United States District Court,
E. D. Texas,
Tyler Division.

June 27, 1975.

Paul S. Colley, Henderson, Tex., for plaintiff.

John S. Ament, Jacksonville, Tex., for defendant.

## MEMORANDUM OPINION

STEGER, District Judge.

This is a dispute over the ownership of a sixty acre tract of land located in Cherokee County, Texas. The land was sold at an execution sale on August 1, 1967. The Defendant in the case, Edwin Brown, purchased the land at that sale for $100.00. The Plaintiff, Exa P. Ross, has brought this action asking that the Court exercise its equity powers to set the sale aside and restore title to the land in the Plaintiff. Alternatively, the Plaintiff asks the Court to award her monetary damages representing the amount that she and her now deceased husband paid on a prior and superior lien which encumbered the land.

This case was first tried in the state District Court in Cherokee County, Texas. On March 8, 1972, a judgment was rendered in that Court. Both parties appealed that judgment to the Court of Civil Appeals sitting in Tyler, Texas, for the Twelfth Supreme Judicial District of Texas. The Tyler Court of Civil Appeals reversed the Trial Court, and dismissed the case holding that there was no jurisdiction in the state court to try the case. Luther L. Ross, husband of the Plaintiff, was a plaintiff in the case tried in the state court. After that action, and before this one commenced, Luther L. Ross died. The Plaintiff then brought this action.

The land in question was owned by Watson Ross and his wife in January, 1962, when they executed a deed of trust to the First National Bank of Troup, Texas, to secure payment of a promissory note in the amount of $3,000.00.

The deed of trust was properly filed for record in Cherokee County, Texas, on January 16, 1962. On September 9, 1965, in the United States District Court for the Eastern District of Texas, Beaumont Division, a judgment was entered in Cause No. 4843 in favor of the United States and against Watson Ross. The judgment was for $10,129.17, plus interest at the rate of six per cent per annum from January 13, 1961, and the costs of court. On April 25, 1966, an abstract of judgment was filed by the United States in Cherokee County, Texas. This abstract properly recorded the judgment rendered against Watson Ross in Cause No. 4843, and a lien attached to the sixty acre tract of land at that time. On December 31, 1966, Watson Ross and his wife conveyed the tract of land to his father, Luther L. Ross, and his mother, Exa P. Ross, Plaintiff in this cause. Under this deed, Exa and Luther Ross took the land as joint tenants with right of survivorship. The deed was properly recorded in the Deed Records of Cherokee County on January 4, 1967. The same day the deed was recorded, January 4, 1967, the Plaintiff and her husband paid the sum of $2,893.00 to the First National Bank of Troup, Texas. This sum completely paid off the remainder of the debt owed by Watson Ross to the First National Bank of Troup. The bank filed for record on January 4, 1967, in Cherokee County, a release of the lien it had held on the sixty acre tract of land.

Thereafter, on August 1, 1967, an execution sale was held at the Courthouse door in Rusk, Texas, to satisfy the judgment rendered against Watson Ross in Cause No. 4843. At the sale, and before any bids were received, the Deputy United States Marshal who was conducting the sale stated in response to a question that he understood there was a lien on the land. This statement by the Deputy Marshal was in error, and was based on the mistaken belief that the land was encumbered by the lien of the First Na-tional Bank of Troup, Texas. As stated earlier, this lien had been released. Defendant Edwin Brown purchased the land at this sale for $100.00.

From the evidence offered in the case, the Court concludes that Defendant Brown believed that the land was encumbered by a superior lien at the time he purchased it. The Court further concludes, from the testimony of the Plaintiff's expert witness, that on August 1, 1967, the date of the sale, the sixty acre tract of land was worth $125.00 per acre, making its total value $7,500.00.

■ Under the Texas recording statutes,[1] a properly recorded instrument is superior to those instruments subsequently recorded. The judgment lien of the United States was recorded prior in time to the title of the Plaintiff. The Defendant took his title under this judgment lien, and his title is therefore legally superior to that of the Plaintiff.

The main issue facing the Court is whether the Court, in an exercise of its equity powers, should set the execution sale aside and restore title of the land to the Plaintiff. Having carefully considered the issue, the Court determines that the execution sale should not be set aside, and title to the land should remain in the Defendant.

■ Initially, the Court must determine whether to apply state or federal law to the case. The Court is of the opinion that the law of Texas should be applied under Fed.R.Civ.P. 69(a). See, *Leeds Music Corporation v. Jones*, 6 F.R.D. 616 (E.D.Pa.1945), aff'd 159 F. 2d 415 (3rd Cir. 1946).

■ The policy of the law of Texas is to sustain execution sales. *Burnam v. Blocker*, 247 S.W.2d 432 (Tex.Civ. App. Ft. Worth 1952 writ refused); *Hodges v. Commonwealth Bank & Trust*, 44 S.W.2d 400 (Tex.Civ.App. San Antonio 1931 no writ). However, Texas also has the general rule that an execution sale may be set aside if there is fraud, mistake or other circumstance at

1. Vernon's Ann.Civ.St. Art. 6624 et seq.

the sale which causes the land to bring a grossly inadequate price. *Foote v. Kansas City Life Ins. Co.*, 92 F.2d 744 (5th Cir. 1937); *Taul v. Wright*, 45 Tex. 388 (1876); *Gregg v. First National Bank*, 26 S.W.2d 179 (Tex.Com.App. 1930) holding approved; *Prudential Corporation v. Bazaman*, 512 S.W.2d 85 (Tex.Civ.App. Corpus Christi 1974, no writ); *Brimberry v. First State Bank of Avinger*, 500 S.W.2d 675 (Tex.Civ.App. Texarkana 1973, writ ref'd n.r.e.). This rule of law is apparently almost universal. See, e.g., *Graffam v. Burgess*, 117 U.S. 180, 6 S.Ct. 686, 29 L.Ed. 839 (1886); *Weir v. United States*, 339 F.2d 82 (8th Cir. 1964); *City Building Corporation v. Farish*, 292 F.2d 620 (5th Cir. 1961).

Under the law of Texas, it would appear at first glance that the Plaintiff has proved a case entitling her to the equitable relief sought. However, the Court has concluded that the facts of the case do not warrant setting aside the execution sale. There is no doubt that $100.00 was a very low price for land that the Court has found to be worth $7,500.00 on the day of the sale. The evidence further reveals that there was a mistake or irregularity at the sale. This occurred when the Deputy Marshal conducting the sale stated to the prospective bidders that he understood the land was encumbered by a lien. The land was not in fact encumbered by a lien, and this mistake probably contributed to the low price the land brought. But the flaw in the Plaintiff's case is that she has not demonstrated that the mistake and resulting low price caused her any injury. According to the Plaintiff's own expert witness, the land was worth $7,500.00 on the sale date. The judgment against Watson Ross in Cause No. 4843, pursuant to which the land was being sold, was for $10,129.17 plus interest at the rate of six per cent per annum from January 13, 1961, plus the costs of court. An examination of the record in Cause No. 4843 reveals that at the time of the sale, the full amount of the judgment was outstanding and still owed by Watson Ross.[2] Therefore, if the land had brought its full value, it would still have brought far less than the judgment debt it was sold to satisfy. The full amount of the proceeds of the sale would have been applied to the debt, and the Plaintiff would have received nothing. Thus even if the land had brought its full value, the Plaintiff would be in no better position than she is at present.

Inherent in the principles of law concerning setting aside execution sales is the principle that the party seeking to set aside the sale must have suffered some injury as a result of the mistake or irregularity that occurred at the sale. *Foote v. Kansas City Life Ins. Co.*, 92 F.2d 744 (5th Cir. 1937); *Hawley v. Bullock*, 29 Tex. 216 (1867); *Downs v. Wagnon*, 66 S.W.2d 777 (Tex.Civ.App. Eastland 1933, writ dismissed); 33 C.J.S. Executions § 227 subsec. b; 24 Tex. Jur.2d Executions § 130 (1961). The Plaintiff has not shown an injury here, and under this set of facts, the Court feels that it would be inequitable to set aside the sale and take the Defendant's title from him.

The situation would be different if the original owner of the land, Watson Ross, had brought suit to cancel the sale. He was truly injured by the low price paid for the land since he had a large judgment to satisfy. The United States was also injured by the low price, since the Government owned the judgment the land was sold to satisfy. But neither of these is a party to this suit, and the judgment in Cause No. 4843 has been satisfied.

The Court would also take a different view if the sixty acre tract of land might

2. The Court takes notice of the record and proceedings in cause No. 4843. *Wright v. City of Montgomery, Alabama*, 406 F.2d 867, 869 n. 5 (5th Cir. 1969); *Ackermann v. United States*, 178 F.2d 983 (5th Cir. 1949), aff'd 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950); *Wright & Miller, Federal Practice and Procedure*: Civil § 2410.

have brought more than enough to satisfy the judgment debt. In that event, the Plaintiff would be entitled to the excess of the sale proceeds over the amount of the debt. But the Plaintiff's own expert witness testified that the land was worth $7,500.00. The possibility that, but for the mistake at the sale, land worth $7,500.00 might have sold for more than $10,129.17, plus a substantial amount of interest, is extremely remote. The policy of sustaining execution sales should not be circumvented because of such a remote possibility.

■ The Plaintiff has alternatively prayed that she recover the amount she and her husband paid to the First National Bank of Troup, plus interest. The Plaintiff asserts that this money was paid to protect her ownership of the tract of land in question. The Defendant states that he is willing to pay the Plaintiff the amount she paid to the Troup bank.

The Court concludes that the Plaintiff is entitled to be subrogated to the rights of the First National Bank of Troup. An examination of the record convinces the Court that payment of this debt to the bank was not a part of the consideration for the transfer of the land. The deed itself recites that the only consideration was $10.00 in hand paid. At the trial in the state court, the transcript of which has been introduced into evidence, Luther L. Ross testified that the consideration for the transfer was the cancellation of a $1,700.00 debt owed by Watson Ross to his parents. He further testified that payment of the note to the First National Bank of Troup was not a part of the consideration. From the evidence, the Court determines that the Plaintiff and her husband paid the debt in order to protect their title to the land. They therefore have succeeded to the rights of the First National Bank of Troup, and have an equitable lien on the property in the amount of $2,893.00 plus 10% interest[3] from January 4, 1967. *Hurt v. Read,* 108 F.2d 282 (5th Cir. 1939); *Harrison v. First National Bank of Lewisville,* 238 S.W. 209 (Tex.Com.App. 1922) judgment adopted; *McDermott v. Steck Co.,* 138 S.W.2d 1106 (Tex.Civ. App. Austin 1940, writ refused); *Ricketts v. Alliance Life Ins. Co.,* 135 S.W. 2d 725 (Tex.Civ.App. Amarillo 1939, writ dism.Judgm.Cor.); *Meador v. Wagner,* 70 S.W.2d 794 (Tex.Civ.App. El Paso 1934, writ dismissed); 53 Tex.Jur.2d Subrogation § 41 (1964); see also, *Murphy v. Smith,* 50 S.W. 1040 (Ct.Civ. App. of Tex.1899).

In summary, the Court holds that under the facts of this case, the execution sale should not be set aside and title to the sixty acre tract of land should remain in the Defendant. The Court further holds that under the equitable doctrine of subrogation, the Plaintiff is entitled to an equitable lien on the land in the amount of $2,893.00, plus 10% interest from January 4, 1967.

Judgment will be entered in accordance with this opinion.

---

3. The 10% interest rate was the interest rate provided for in the original loan from The First National Bank of Troup to Watson Ross. See, *Fox v. Kroeger,* 119 Tex. 511, 35 S.W.2d 679 (1931); Vernon's Ann. Civ.St. Art. 5069–1.05.