United States Court of Appeals,

Fifth Circuit.

No. 92-1609.

DIETRICH INDUSTRIES, INC., Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

April 16, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before REAVLEY, KING and WIENER, Circuit Judges.

REAVLEY, Circuit Judge:

Under Texas law of equitable subrogation, is the purchaser of encumbered property who discharges a senior lien as part of the purchase price entitled to subrogate to the position of priority over a junior recorded lien? We answer that the purchaser is subrogated to the senior position and reverse the district court's summary judgment in favor of the junior lienholder.

I. BACKGROUND

Australian Acquisitions, Inc. (AAI) owned a tract of land in Hutchins, Texas. In 1988, AAI executed a deed of trust on this property in favor of Broadlands Limited (Broadlands) to secure a debt of $3,825,210.00 (Broadlands lien). Broadlands properly recorded the deed of trust on September 28, 1988. In 1989, the Internal Revenue Service (IRS) filed two federal tax liens on the property. IRS properly recorded the tax liens in Dallas County. The Broadlands lien was superior to the tax liens.

In March 1990, Dietrich Industries, Inc. (Dietrich) agreed to purchase the property from AAI for $385,000.00. At the closing in May, AAI executed a special warranty deed conveying the property to Dietrich. Sale proceeds in the amount of $319,892.01 were paid to Broadlands in consideration for Broadlands's release of its lien.[1] The parties applied the balance of the sale proceeds

---

[1] The lien release is dated April 4, 1990. The release states that "in consideration for the partial payment of the Indebtedness, [Broadlands] has agreed to deliver ... this Release of Lien...." The partial payment was not made until May 1990, and we have no reason to doubt that this release

to pay closing costs; AAI received no money from the sale.

As established by an uncontroverted affidavit, Dietrich had no actual knowledge of the junior tax liens when it purchased the property. None of the documents pertaining to the Dietrich sale mention the existence of tax liens.

Dietrich asserts that it is entitled to equitably subrogate to Broadlands's position as the senior lienholder. Dietrich claims priority only to the amount that it paid in discharging the Broadlands lien ($319,892.01). As an equitable lienholder, Dietrich claims the right to foreclose its own property. Under Dietrich's theory, the foreclosure proceeds would first be used to satisfy Dietrich's equitable lien of $319,892.01, and then be used to satisfy the junior tax liens. In this lawsuit against the United States, Dietrich seeks a declaratory judgment that Dietrich holds an equitable lien which is superior to the federal tax liens. Additionally, Dietrich seeks to judicially foreclose its superior, equitable lien.

Dietrich and the government filed cross-motions for summary judgment. The district court entered summary judgment in favor of the government, concluding that Dietrich is not entitled to subrogation.

## II. ANALYSIS

### A. FEDERAL TAX LAW

The government does not dispute that, prior to AAI's sale to Dietrich, the Broadlands lien was superior to the tax liens. The parties agree that AAI's sale to Dietrich did not extinguish the tax liens. So the issue here is the priority of those tax liens, not their existence. In determining the priority of federal tax liens, courts must consider the state law of subrogation. *See* I.R.C. § 6323(i)(2) ("Where, under local law, one person is subrogated to the rights of another with respect to a lien or interest, such person shall be subrogated to such rights for purposes of any [federal tax lien]."); *see also Han v. United States,* 944 F.2d 526, 529-31 (9th Cir.1991). Dietrich has priority over the tax liens if, under Texas law, Dietrich is entitled to subrogate to Broadlands's position as senior lienholder.

### B. TEXAS SUBROGATION LAW

---

was delivered upon payment of the money.

Texas recognizes two types of subrogation: "conventional subrogation" and "legal subrogation." *Fleetwood v. Med Center Bank,* 786 S.W.2d 550, 554 (Tex.App.—Austin 1990, writ denied). Conventional subrogation generally depends on an agreement between the parties, while legal subrogation, which courts often call "equitable subrogation," is controlled by the principles of equity. Dietrich claims equitable subrogation, which traditionally receives favorable treatment in Texas. *See id.* There are several situations in which equitable subrogation might arise. *See generally* Grant S. Nelson & Dale A. Whitman, REAL ESTATE FINANCE LAW §§ 10.1-10.7 (2d ed. 1985). We are concerned with the application of the equitable subrogation doctrine to purchasers of encumbered property.

*1. Purchasers of Encumbered Property*

In Texas, any person who pays the debt of another to protect her own interest in property is entitled to subrogate to the rights of the creditor whose claim was paid. *Fears v. Albea,* 69 Tex. 437, 6 S.W. 286, 289 (1887); *McDermott v. Steck Co.,* 138 S.W.2d 1106, 1109 (Tex.Civ.App.—Austin 1940, writ ref'd). This rule extends to purchasers who pay an existing mortgage debt as a part of the purchase transaction. *See First Nat'l Bank of Houston v. Ackerman,* 70 Tex. 315, 8 S.W. 45, 47 (1888); *Fears,* 6 S.W. at 288-89. In these cases, courts consider the purchaser/payor an equitable assignee of the lienholder (or mortgagee), and permit the purchaser/payor to keep the lien alive and enforce the lien for her own benefit. *See Fears,* 6 S.W. at 289. The equitable assignment is a legal fiction which does not depend on the parties' intent to keep the lien alive. Nor is the equitable assignment affected by the doctrine of merger-of-title, which in certain situations calls for the lien to merge into the title. Thus, equitable subrogation permits a purchaser to hold an equitable lien on the purchaser's own property.

Several Texas courts have stated a companion rule: a purchaser who *assumes* payment of a mortgage as part of the purchase price, and *thus becomes the principal and primary debtor,* is not entitled to subrogate to the rights of the lienholder. *See, e.g., Harrison v. First Nat'l Bank of Lewisville,* 238 S.W. 209, 210 (Tex.Comm'n App.1922, judgm't adopted); *Cheswick v. Weaver,* 280 S.W.2d 942, 944 (Tex.Civ.App.—Beaumont 1955, writ ref'd n.r.e.); *McDermott,* 138 S.W.2d at

1109;  *see also* 3 John Norton Pomeroy, EQUITY JURISPRUDENCE § 1213 (5th ed. 1941) (equitable subrogation should not occur when a purchaser "has assumed payment of the mortgage debt and ... rendered himself the principal and primary debtor therefor").  However, some Texas courts have permitted subrogation in situations where the purchaser has assumed payment of a prior mortgage. *See, e.g., Murphy v. Smith,* 50 S.W. 1040, 1042 (Tex.Civ.App.—1899, no writ);  *Davis v. John V. Farwell Co.,* 49 S.W. 656, 658 (Tex.Civ.App.—1899, no writ);  *see also* Nelson & Whitman, REAL ESTATE FINANCE LAW § 10.7 (arguing that a purchaser who assumes payment of a lien and later pays it should be subrogated to the position of the discharged lien).  Because Dietrich did not *assume* AAI's debt, we need not decide whether Texas law permits a purchaser who assumes a debt to subrogate once that purchaser has paid the assumed mortgage.  However, at least one Texas court has applied the prior version of the rule concerning assumptions to purchasers who, instead of assuming the mortgage, discharged the debt as part of the agreed purchase price.  *See McDowell v. M.T. Jones Lumber Co.,* 42 Tex.Civ.App. 260, 93 S.W. 476, 476-77 (1906, no writ).

The government argues that this case is controlled by *McDowell.*  In *McDowell,* as here, the seller and purchaser agreed that the purchase price would be used to pay the seller's debt and extinguish the accompanying lien, which was a superior lien.  The purchaser, unaware of the existence of a recorded junior lien, believed he was taking the land free of all encumbrances.  Sometime after the purchaser bought the property, the junior lienholder sought to foreclose its lien.  Relying on the rule that purchasers who assume mortgages may not subrogate, the court of appeals refused to allow the purchaser to subrogate to the rights of the senior lienholder.  If *McDowell* represents Texas law, Dietrich is not entitled to subrogation.

But we believe that *McDowell* contravenes the Texas Supreme Court's decisions in *Fears* and *Ackerman.*  In *Fears,* the land in question was encumbered by a first and a second lien.  The seller and purchaser agreed that the sale proceeds would be used to pay the first mortgage, which was later released.  Unaware of the junior lien, the purchaser expected the land to be free of all liens.  The Texas Supreme Court concluded that the purchaser's payment of the senior lien entitled the purchaser to subrogate to the superior rights of the senior lienholder.  *Fears,* 6 S.W. at 289-90.  In *Ackerman,*

the Texas Supreme Court similarly held that a purchaser who applies the agreed purchase price to release a senior lien is entitled to subrogate to the position of the senior lienholder. *Ackerman,* 8 S.W. at 45, 47. The Texas Supreme Court's decisions in *Fears* and *Ackerman* control our decision here.

The *McDowell* court might have been correct in stating the rule that a purchaser who *assumes* a mortgage is not thereafter entitled to subrogation. In fact, *McDowell* is often cited for such a rule. *See, e.g., Cheswick,* 280 S.W.2d at 944; 68 TEX.JUR.3d *Subrogation* § 25, at 69 & n. 34 (1989). Nevertheless, we believe that the *McDowell* court ignored the *Fears* and *Ackerman* decisions in applying such a rule to a purchaser who, instead of assuming the senior debt, simply discharged the debt as part of the agreed purchase price.

Based on *Fears* and *Ackerman,* Dietrich is entitled to subrogate to Broadlands's position as senior lienholder. The government proffers two additional arguments in support of its position that equitable subrogation does not control this case.

*2. Constructive Knowledge of the Tax Liens*

The government contends that Dietrich is not entitled to equitable subrogation because Dietrich had constructive knowledge of the tax liens and was negligent in failing to discover the liens. In some jurisdictions constructive knowledge bars a subrogation claim, *see, e.g., Hieber v. Florida Nat'l Bank,* 522 So.2d 878 (Fla.App. 3d Dist.), *pet. for review denied,* 534 So.2d 399 (Fla.1988), but, in Texas, a purchaser with constructive knowledge of the junior lien is not precluded from asserting equitable subrogation. In *Fears,* the Texas Supreme Court applied the equitable subrogation doctrine even though the purchaser had constructive knowledge of the junior lien. *See Fears,* 6 S.W. at 288, 292; *see also Sanger Bros. v. Ely & Walker Dry Goods Co.,* 207 S.W. 348, 349 (Tex.Civ.App.—Fort Worth 1918, writ ref'd); *McDermott,* 138 S.W.2d at 1107. The government has cited no Texas authority for the proposition that a purchaser with constructive knowledge is precluded from seeking equitable subrogation.[2]

---

[2]The IRS relies on *Providence Institution for Savings v. Sims,* 441 S.W.2d 516 (Tex.1969), in which the Texas Supreme Court noted that "[n]egligence on the part of one seeking subrogation is of some importance when the right is wholly dependent upon equitable principles." *Id.* at 519.

*3. Partial Payment of the Senior Debt*

As a general rule, a person is not entitled to subrogate to the rights of a creditor until the creditor's claim against the debtor has been satisfied or paid in full. *Sims,* 441 S.W.2d at 519; *Ricketts v. Alliance Life Ins. Co.,* 135 S.W.2d 725, 735 (Tex.Civ.App.—Amarillo 1939, writ dism'd judgmt cor.). Here, Dietrich did not pay the full amount of the debt which AAI owed Broadlands. Broadlands, however, agreed to release its lien in consideration of the partial payment.

The government argues that Dietrich's failure to pay the entire debt prevents it from subrogating to the rights of Broadlands. We disagree. This general rule requiring payment of the entire debt protects the senior lienholder whose rights are being subrogated (i.e., Broadlands). *Sims,* 441 S.W.2d at 519. The rationale behind the rule is that equitable subrogation should not prejudice the senior lienholder's attempt to collect the entire indebtedness secured by the senior lien. *See id.; Ricketts,* 135 S.W.2d at 735. The fact that Dietrich has not paid the entire indebtedness is not a matter about which the government, as a junior lienholder, can complain. *See Hurt v. Read,* 108 F.2d 282, 283 (5th Cir.1939). Moreover, Broadlands's rights will not be prejudiced by Dietrich's subrogation because Broadlands agreed to release its entire lien in exchange for partial payment of the debt.

C. EQUITY

In applying the Texas rules of equitable subrogation, we do not lose sight of the equities. Dietrich purchased the property with the expectation that the property would be free of encumbrances. Had Dietrich been aware of the federal tax liens, it could have structured the purchase in a manner that would have protected its interest. For example, Dietrich might have taken a formal assignment of the Broadlands lien or purchased the property at foreclosure sale which met the notice

The *Sims* court explained that jurisdictions are split as to the effects of constructive knowledge in equitable subrogation cases. The court found no Texas cases holding that constructive knowledge bars an equitable subrogation claim, but found one Texas court of appeals case which adopted the view that constructive knowledge did not preclude equitable subrogation. *Id.* (citing *Sanger,* 207 S.W. at 349.)

The *Sims* court concluded that its case did not entirely depend upon equitable subrogation, so the court did not decide the effect of constructive knowledge in cases involving purely equitable subrogation.

requirements of I.R.C. § 7425.  Equitable subrogation in this case treats Dietrich as if it took a formal assignment of a portion of the Broadlands lien.

Denying subrogation in this case would give the government an unearned windfall in that it would elevate the government's liens for no good reason.  *See generally* Nelson & Whitman, REAL ESTATE FINANCE LAW, § 10.7;  Note, *Subrogation of Purchaser to Rights of Senior Mortgagee Against Junior Encumbrances,* 48 YALE L.J. 683, 689 (1939).  Before AAI's sale to Dietrich, the government's tax liens were subordinate to the Broadlands lien.  Dietrich's subrogation does not place the government in a worse position than it occupied before AAI's sale to Dietrich.  *See Sanger Bros.,* 207 S.W. at 350 (recognizing that subrogation would not place junior lienholder in a worse position); *see also Han,* 944 F.2d at 530 & n. 3;  *Burgoon v. Lavezzo,* 92 F.2d 726, 732-33 (D.C.Cir.1937) (same).[3]

Dietrich is entitled to subrogate only to the extent of its payment to Broadlands ($319,892.01).[4]  Permitting Dietrich to subrogate to the rights of Broadlands does not extinguish the tax liens.  At foreclosure, proceeds shall be used to satisfy Dietrich's equitable lien before being used to satisfy the federal tax liens.[5]

### III. CONCLUSION

Dietrich holds a superior, equitable lien in the amount of the proceeds paid to Broadlands. Dietrich is now entitled to seek judicial foreclosure of its senior lien.  Accordingly, we reverse the district court's judgment in favor of the government and remand for further proceedings consistent with this opinion.

---

[3]According to Dietrich, the tax liens were practically worthless before the sale to Dietrich because the property had no value in excess of Broadlands's security interest.

[4]Some Texas cases suggest that subrogation extends to the amount paid to discharge the senior debt *plus* interest on that amount.  *See Ricketts,* 135 S.W.2d at 735;  *Ross v. Brown,* 396 F.Supp. 192, 196 (E.D.Tex.1975).  We do not address whether a purchaser's subrogation right extends to interest because Dietrich only seeks to subrogate to the extent of its payment to Broadlands ($319,892.01).

[5]The government is in a better position than it was before the sale to Dietrich.  The government is not entitled to proceeds after satisfaction of the $319,892.01 senior lien.  Before the sale to Dietrich, the tax liens were subordinate to Broadlands's deed of trust, which secured a debt of $3,825,210.95.

REVERSED AND REMANDED.